UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| STANLEY T. JOHSNON, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | Case No. 4:07CV1098 CDP |
| STEVE LARKINS,[1] | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Stanley T. Johnson for a writ of habeas corpus under 28 U.S.C. § 2254. Johnson is currently serving a fifteen year sentence for first-degree burglary, first-degree assault, armed criminal action, and violating an order of protection. I conclude that all of Johnson's claims are procedurally barred. I will therefore deny the petition.

Factual Background

The following recitation of facts comes from the Missouri appellate court's opinion affirming the conviction and sentence in this case:[2]

---

[1] Because Steve Larkins has replaced Pat Smith as the warden of the Eastern Reception, Diagnostic and Correctional Center, Steve Larkins is replaced as the proper party in this case. See Fed. R. Civ. P. 25(d).

[2] Under 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Leubbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)).

Gloria Leitschuh (Victim) was the manager at Parkview Towers Apartments in St. Louis County. Parkview Towers provided apartments for low-income senior citizens. Victim hired [Johnson] to do custodial work. [Johnson's] mother resided in Parkview Towers. Victim never had a personal relationship with [Johnson].

On October 30, 2000, [Johnson] went into Victim's office and told her that he was not coming to work the next day. When Victim asked [Johnson] why, [Johnson] said that Victim knew the reason, and began walking toward the lobby. Victim followed [Johnson] to the lobby. [Johnson] said, "You're f------ Robert Anderson." Victim told [Johnson] that she could not believe that he said that. There were twenty people in the lobby when [Johnson] made the statement.

Victim told [Johnson] to turn in his pager. [Johnson] put his pager on the counter and told Victim that he did not care if she called the police. Victim called the police. [Johnson] went out the front door and continued to scream that Victim was having sex with Robert Anderson. When the police arrived, Victim told them that she did not want [Johnson] in the apartment building or in front of the building. As manager, Victim used her authority to ban [Johnson] from the premises.

Between October 2000 and July 2001, [Johnson] walked by the building and sat on the benches in back of the building to talk to different residents. Victim also had a lot of "hang-ups" after she fired [Johnson] and had her phone number changed. On July 17, 2001, the top of Victim's convertible was cut. She suspected [Johnson] had cut it because she had seen [Johnson] near the apartment building around the time her car was vandalized. On July 19, 2001, an unsigned, nonsensical letter was taped to her office door. Victim made police reports about both of these incidents. Later on July 19, [Johnson] called Victim and told her that he had not cut her convertible top. [Johnson] also told her, "You're dead."

An officer told Victim to get an order of protection, so she applied for one. At the hearing, [Johnson] told the judge that he sneaked into

Parkview Towers at night to see his mother. [Johnson] had a key on a chain around his neck, but the judge did not take the key away from him. The judge granted an order of protection barring [Johnson] from having any contact with Victim at her home or at Parkview Towers. The order went into effect in August 2001.

In January 2002, Victim saw [Johnson] near her home and around the apartment building. [Johnson] also made "filthy and threatening" phone calls to Victim. She called the police to report the calls. Victim had other people on the staff listen to the pone calls. In mid-January, Victim moved into Parkview Towers. On January 13, 2002, [Johnson] called Victim and apologized for everything he had said about her or done to her. [Johnson] also told her that she would not have to go to court. The statement did not make sense to Victim until she received notice the next day that [Johnson] had filed for an order of protection against her. When Victim went to court, [Johnson] was not there, and the matter was dropped.

[Johnson] was arrested and charged in municipal court for trespassing and telephone harassment. A trial was set for March 13, 2002, and Victim was subpoenaed to appear that evening. On March 9, 2002, [Johnson] told Theodore Baskin (Baskin), with whom [Johnson] had formerly worked at Parkview Towers, that he was going to kill Victim. Baskin told [Johnson] to leave her alone. On March 11, 2002, [Johnson] called Victim and told her that he was going to "f---[her] in [her] a--." On March 12, [Johnson] called her and said, "You're dead." After each call, Victim notified the police.

On the morning of March 13, the day of the trial, Victim went downstairs to her office. When she unlocked the door to her office, [Johnson] came out of a door to a nearby stairwell in a rage, holding a butcher knife. Victim fell to the ground and [Johnson] got on top of her with the knife and cut her eyebrow, hands, stomach, legs and feet. [Johnson] asked Victim, "Why are you doing this to me?"

Victim screamed, and [Johnson] jumped up, threw the knife in the corner, and ran out. Victim crawled over to her office door, shut the

door, and locked it, then crawled to her desk to call the police, but the phone handset had been removed. Victim went up to the apartment of the night manager, Louise Shavers (Shavers). Victim, who was crying and covered in blood from her head to her feet, asked Shavers to call the police and her son, which Shavers did.

Officer Daniel Becker (Becker) responded to Parkview Towers. When Becker arrived, Victim told him that [Johnson] had attacked her and that she had an [sic] protective order against him. Victim was taken to Barnes Hospital where she received stitches on her legs and eyebrow.

Becker followed blood droplets to Victim's office and was told that was where the assault occurred. Becker found a twelve-and-a-half inch knife on the floor of the office, which Victim positively identified as the weapon that [Johnson] used to cut and stab her. There were puddles of blood in the middle of the office and droplets of blood on the desk. The phone handset was missing. There was a safe in the room that was partially open and a few coins were on the floor.

## Procedural Background

Johnson is currently incarcerated at Eastern Reception, Diagnostic and Correctional Center. He was convicted according to a jury verdict on one count each of first-degree burglary, first-degree assault, armed criminal action, and violating an order of protection, in the Circuit Court of St. Louis County, on October 7, 2003. The court sentenced him as a prior offender to fifteen years imprisonment for the burglary, assault, and armed criminal action counts and one year imprisonment for violating an order of protection, with the sentences to run

concurrently. Johnson appealed his conviction and sentence to the Missouri Court of Appeals, arguing that the trial court plainly erred when it did not act sua sponte after the State argued in closing, "Think about what the defense is in this case. They presented absolutely no evidence on this case. Our evidence that we showed has not been rebutted. It's uncontradicted." The Missouri Court of Appeals affirmed the conviction and sentence on November 2, 2004.

On January 6, 2005, Johnson filed a motion for post-conviction relief under Missouri Rule 29.15. In his post-conviction motion, Johnson alleged that (1) the state and prosecuting attorney knowingly, willfully, and unlawfully omitted facts, altered facts, and inserted information into evidence that was falsely manufactured to conform with the state's probable cause requirement, (2) the state and prosecuting attorney maliciously prosecuted him, (3) he was denied examination of the complaint at the preliminary examination, (4) he was denied effective assistance of counsel at the preliminary examination in that his attorney helped to cure one of the fatal defects in the complaint, and (5) he was denied effective assistance of counsel in that his counsel obstructed and concealed his access to exculpatory evidence and conspired with the state and prosecutor. On July 14, 2005, without holding an evidentiary hearing, the court denied the motion. Johnson appealed the denial of his motion to the Missouri Court of Appeals. On

September 20, 2006, the Missouri Court of Appeals affirmed the denial of Johnson's post-conviction motion.

Thereafter, on April 30, 2007, Johnson filed a motion to reopen his motion for post-conviction relief, arguing abandonment by post-conviction counsel. The court denied the motion to reopen on May 9, 2007. Johnson appealed the denial of his motion to reopen to the Missouri Court of Appeals, and on January 29, 2008, the Missouri Court of Appeals affirmed the denial of his motion to reopen his Rule 19.15 case.

## Grounds Raised

Johnson now seeks federal habeas corpus relief, asserting the following grounds:

(1) The prosecutor engaged in prosecutorial misconduct in knowingly using false evidence;

(2) The prosecutor engaged in prosecutorial misconduct in failing to disclose information in response to discovery requests regarding evidence to negate the charged offenses;

(3) Johnson was denied a formal arraignment on May 21, 2002; and

(4) The prosecutor engaged in prosecutorial misconduct in that the State knowingly omitted facts from incident and medical reports.

## Exhaustion of Remedies and Procedural Bar

Respondent asserts that all of Johnson's grounds are procedurally barred because he failed to properly raise them in state court. Johnson's first three grounds were not raised in his post-conviction motion, and the state court determined that he had failed to sufficiently plead the fourth ground.

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . is procedurally barred from raising them in a federal habeas action, regardless of whether or not he has exhausted his state remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "Fairly present" means that state prisoners are required to "refer to a specific federal constitutional right, a particular constitutional case, or a state case raising a pertinent federal constitutional issue." Id. at 411-12. A state law claim that is raised in state court which "is merely similar to the federal habeas

claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The Supreme Court has held that a state prisoner can overcome procedural default if he or she can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. The Court explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 753 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "To fit within the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence." Weeks v. Bowersox, 119 F.3d 1342, 1350 (8th Cir. 1997) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). In order to make a showing of actual innocence, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327. Johnson has not alleged sufficient cause or a fundamental miscarriage of justice to overcome his procedural default.

Johnson's petition urges that he procedurally defaulted on Grounds 1, 2, and 3 due to abandonment of post-conviction counsel. The Missouri Court of Appeals has ruled that Johnson's post-conviction counsel did not abandon him. Johnson v.

State, 244 S.W.3d 226, 228-29 (Mo. Ct. App. 2008). Instead, the Missouri Court of Appeals found that Johnson actually alleged a claim of ineffective assistance of post-conviction counsel. Id. at 229. Because Johnson had no constitutional right to post-conviction counsel, he had no right to effective assistance of post-conviction counsel. Id. Therefore, any inadequacies in Johnson's post-conviction representation do not establish a legal cause for his failure to raise Grounds 1, 2, and 3 in his post-conviction motion.

Additionally, Johnson's fourth ground for post-conviction relief is procedurally barred because he failed to sufficiently plead this ground in his post-conviction proceedings. The Missouri Court of Appeals found that Johnson's post-conviction motion alleged "no facts showing how the state allegedly falsely manufactured evidence." It further noted that Johnson had failed "to show what facts the state omitted added or altered." The Eighth Circuit has held, "The failure to satisfy state procedural requirements serves as an adequate and independant state procedural bar to review." Smith v. Groose, 998 F.2d 1439, 1441 (8th Cir. 1993). Because he has procedurally defaulted all of his claims, Johnson's petition will be dismissed.

I have also considered whether to issue a certificate of appealability. To grant a certificate of appealability, the Court must find a substantial showing of

the denial of a federal constitutional right.  See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).  A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)).

Petitioner has not made such a showing.  Therefore, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Stanley T. Johnson for a writ of habeas corpus [# 1] is denied.

A separate judgment in accordance with this memorandum and order will be issued this same day.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of October, 2008.